## Frank Martin v. The State.

### No. 2030. Decided June 29, 1900.

**1. Murder—Opinion Evidence.**

On a trial for murder, where a witness stated on cross-examination that he was at the scene of the killing immediately after the shooting and heard defendant say, "Yes, damn you, I told you to stay off my place and you would not do it, and now see what you got," Held, it was error to permit the witness to state what he understood defendant to mean by the expression. Such evidence was opinion evidence and inadmissible.

**2. Same—Defense of Property—Charge.**

On a trial for murder which occurred on account of deceased's refusal to leave premises rented by defendant to one McK. when ordered to do so by defendant's wife, and where it appeared that defendant had rented the premises on condition that deceased was not to be permitted to go upon said premises, Held, defendant had a right to enforce the condition and it was error for the court to charge the jury in effect that defendant nor his wife had any right to enforce such condition by ordering deceased off said rented premises.

**3. Same.**

On a trial for murder, where it appeared that deceased and defendant were brothers-in-law, and had had trouble about property, and that defendant had rented certain property to one McK. with an agreement and upon condition that deceased should be kept off the same, and where it further appeared that deceased came on the premises and when ordered off by defendant's wife refused to go and used insulting language to the wife, Held, error for the court in the charge to the jury to limit defendant's right to go out into his own yard adjacent to the scene of the difficulty with his gun alone for the purpose of protecting his wife against deceased's *insulting acts* and language towards his wife. His conduct *in going into* his own yard with his gun should be considered in the light of all the circumstances immediately surrounding the difficulty.

**4. Same—Acquittal of Murder in First Degree—Charge on Second Trial Which Submits the Lesser Degree on Evidence Showing the Highest.**

On a second trial, after defendant had been previously acquitted of ·murder in the first degree, it was not error for the court to submit the issues of murder in the second degree and manslaughter, even though the evidence on such second trial might also show defendant guilty of murder in the first degree.

Appeal from the District Court of Hays. Tried below before Hon. H. Teichmuller.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

This is the second appeal in this case. See Martin v. State, 40 Texas Criminal Reports, 660, and the facts attendant upon the homicide can be sufficiently gathered from these two appeals.

*Will G. Barber,* for appellant, filed a very able and elaborate brief and argument especially upon the following propositions:

The State is not entitled to a conviction of manslaughter upon proof showing only murder. If a defendant, acquitted of murder in the first degree, is upon trial for murder in the second degree and manslaughter, it is vital error for the court's charge to require, authorize or permit a conviction of manslaughter upon evidence proving murder in the first degree.

Where the evidence suggests and raises the issue of self-defense, manslaughter, and murder of first and second degrees, and defendant has been acquitted of murder in first degree, it is error to charge the jury to convict defendant of manslaughter if they find against the self-defense and have a reasonable doubt as to defendant being guilty of murder in the second degree, thereby providing for a conviction of manslaughter without regard to whether the jury find the facts which make manslaughter as that offense is defined. Parker v. State, 22 Texas Crim. App., 105; Fuller v. State, 30 Texas Crim. App., 559; Conde v. State, 34 S. W. Rep., 286; Carter v. State, 40 S. W. Rep., 498; Turner v. State, 54 S. W. Rep., 579.

The Reporter regrets that owing to its length he is unable to reproduce the able argument in support of these propositions.

*Dave W. Wilcox* and *Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of manslaughter, and given three years in the penitentiary.

The witness England testified on cross-examination that immediately after the shooting he went to the scene of the homicide and found appellant standing in his yard, gun in hand, facing where deceased was lying, and remarking in the hearing of the witness: "Yes, damn you! I told you to stay off my place, and you would not do it, and now you see what you got." State's attorney then asked the following question: "Did you not understand that at that time defendant was giving as a reason for shooting Hodges that Hodges had come onto his place?" Witness answered: "I suppose I would have so understood if I had not known of the way things stood between Hodges and Martin, but, knowing what I did, I thought Hodges had matched a scrap, and got the worst of it." The State's attorney then asked this question: "If Martin had not been your friend, or if you had heard some one who was not your friend say what you heard Martin say, would you not have understood that he was giving the reason why he shot Hodges when he said that he had told him to stay off the place and he would not do it?" Witness answered that he supposed that he would. Various objections were urged to the admission of this evidence. This testimony was but the opinion of the witness as to what Martin meant by using the expression, "Yes, damn you! I told you to stay off my place, and you would not do it, and now you see what you got," and was therefore inadmissible. The jury were as competent to form their conclusions in regard to what appellant meant by using the expression as was the witness, and it was their business to form the conclusion, and not the witness'.

The homicide occurred at the fence which was the dividing line between appellant's residence and that of McKean. McKean had rented

the house that he was occupying from appellant. It was understood between McKean and appellant that deceased (brother-in-law of appellant) should not be permitted to go upon the place rented by McKean, and it was with this understanding that appellant rented McKean the premises. McKean, however, denied this, and it was one of the issues upon the trial. It was further in evidence, in connection with the homicide, that, immediately preceding the shooting, Hodges was in the cow lot on the premises rented McKean, and that defendant's wife went into her yard and ordered Hodges off the premises so rented by McKean, stating to him that he had no right there. In this connection the court charged the jury: "E. P. Hodges had a right to be on the premises leased by defendant to McKean, and neither Frank Martin nor his wife had the right to order him off the premises. But if you find from the evidence that they or defendant actually believed he had such right, and acted on such belief, you will consider this in determining appellant's purpose and intent in coming out of the house." Various objections were urged to this. We are of opinion that the charge states the law incorrectly. The jury should have been told that, if it was understood and agreed between defendant and McKean that deceased was not to be permitted to go upon the rented premises, the defendant, or his wife, acting for him, had the right to request Hodges to go away. If we are correct, this charge placed defendant and his wife in the attitude of wrongdoers at the beginning of the difficulty, and placed defendant's case in a very unfavorable light before the jury, and was therefore calculated to injure him. If it was understood between McKean and defendant, as a part of the agreement with reference to the renting of the place, that deceased should not be permitted to go upon it, it was a condition which defendant had a right to enforce.

The court further charged the jury: "If you believe from the evidence that E. P. Hodges was on the premises of defendant's tenant, McKean; that Mrs. Frank Martin went out and told him to leave their premises, and that E. P. Hodges, in reply, used insulting language or committed insulting acts towards her,—then Frank Martin, hearing such insulting language addressed to his wife, or insulting conduct, was justified in going out to protect her, and take his gun along and use it in case of emergency, or the necessity of protecting himself or his wife." This charge is rather restrictive and would make the conditions therein recited only those which would justify defendant in going into the yard with his gun, and would constitute defendant a wrongdoer unless the jury should believe the insulting language or acts which were said to have been used were done by Hodges. His conduct in going into his own yard with his gun should be taken, not only in the light of insulting language, acts and conduct used by deceased towards Mrs. Martin, but in the light of the other facts occurring before, at the time of and immediately surrounding the difficulty which led to the shooting. He had the right to have his gun in his own yard. This charge, taken in con-

nection with other facts, seems to us to be rather restrictive under the
facts of this case.

Another bill of exceptions recites that appellant had heretofore been
acquitted of murder in the first degree, and convicted of murder in the
second degree, which conviction had been reversed on appeal; that there
was evidence introduced on the trial which resulted in the present con-
viction tending to show murder in the first degree. The court sub-
mitted only the issues of murder in the second degree and manslaughter
as predicates for conviction. An exception was reserved because of the
failure of the court to instruct the jury that if they believed from the
facts that appellant was guilty of murder in the first degree, they should
acquit; citing in support thereof a line of cases beginning with Parker
v. State, 22 Texas Criminal Appeals, 105, and ending with Turner's
case, 41 Texas Criminal Reports, 545. We do not understand that those
cases are applicable to the question raised, and regard it unneccessary to
discuss them. It is the duty of the court to present the law applicable to
the issues arising under the indictment on the evidence. Murder in the
second degree and manslaughter were clearly presented by the testi-
mony. If appellant had not been acquitted of murder in the first de-
gree, and the court had limited the consideration of the jury to the issues
of murder in the second degree and manslaughter, there would be no
cause of complaint. In that event it would have been eliminating from
the consideration of the jury the most serious aspect of the evidence, and
the highest grade of the offense. If there had been three counts in the
indictment,—one charging murder in the second degree and a third
charging manslaughter,—appellant could not be heard to complain if
the court had instructed the jury to disregard the first and second
counts, and consider only the third. The State would have had the
right to elect, if deemed proper, upon which count a conviction would
be sought. These questions have been long settled. While the State
could not be forced to elect, yet, if an election was made, appellant could
not complain; and it has been held, by a line of decisions unquestioned,
so far as we are aware, that, where the court only submits the issues
under one count, it is tantamount to such an election by the State. In
the case at bar there was evidence supporting the issues of murder in the
second degree and manslaughter, which justified the court in giving
the law in charge applicable to both grades of homicide. Murder in the
first degree, murder in the second, and manslaughter, under our law,
are held to be grades of an unlawful killing (that is, they are grades of
the same offense) ; and this is not changed by the fact that there is testi-
mony which supports all three grades of homicide. Such is the settled
law. If it was necessary to charge, in homicide, where there is evidence
supporting all three grades of this offense, that accused should be ac-
quitted of manslaughter if there was evidence justifying a verdict of
murder in the first degree, then it would be clearly error if the court
failed to charge the jury that, if the evidence supported murder in the

first, they should acquit of manslaughter or murder in the second degree. The court followed the correct rule, and submitted the different phases of the law as applicable to the evidence which might support murder in the second degree or manslaughter. It was not error to fail to charge an acquittal if there was evidence of murder in the first degree. It clearly would not have been error for the jury, if they believed appellant guilty of murder in the first degree, to convict of murder in the second degree. There was evidence supporting the issues submitted by the trial court, and there was no error in submitting such issues. . For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*